RICHTER *v.* JEROME and others.[1]

*(Circuit Court, E. D. Michigan.* November 10, 1885.)

1. DEPOSITIONS DE BENE ESSE—WHEN TAKEN.
    Where a bill praying relief had been dismissed by the circuit court upon demurrer, and the case was pending in the supreme court on appeal, with no probability of its being heard in less than two or three years, and there were aged and infirm witnesses whose testimony would be material, if the case were reversed and remanded for a hearing upon the merits, and there was no provision by law for taking their testimony, it was *held* that the case was a proper one for a bill to take depositions *de bene esse.*

2. SAME—BILL MUST AVER, WHAT.
    In such a bill the plaintiff must aver (1) that there is a suit depending in which the testimony of the witnesses named will be material; (2) that the suit is in such condition that the depositions cannot be taken in the ordinary methods prescribed by law, and that the aid of a court of equity is necessary to perpetuate the testimony; (3) the facts which the plaintiff expects to prove by the testimony of the witnesses sought to be examined, that the court may see that they are material to the controversy; (4) the necessity for taking the testimony, and the danger that it may be lost by delay.

3. SAME—FAILURE TO MAKE PROPER AVERMENTS.
    A failure to make the proper averment in any of these particulars is good ground for a demurrer, but ordinarily the allegations of the bill cannot be put in issue by an answer to any greater extent than could similar allegations in an affidavit to take depositions *de bene esse.*

[1] Affirmed. See 8 Sup. Ct. Rep. 106.

In Equity. On motion to set aside order *pro confesso*, and for leave to answer.

This was a bill to take testimony *de bene esse*. The bill stated, in substance, the filing of a bill by the plaintiff, in the Western district of this state, against the defendants in this bill, the object of which was to charge with a lien certain lands lying in that district; that defendants demurred to this bill for want of equity; that the demurrer was sustained, and the bill dismissed; that the cause is now pending on appeal in the supreme court of the United States, and that it will not be reached within two years, and if it be reversed there will be a delay of six months more before evidence can be taken. The bill further set forth that the testimony of four witnesses, now living, was necessary to the maintenance of plaintiff's case, whose testimony, in the inevitable lapse of time before it can be taken in the ordinary course of business, is in danger of being lost; that one of these witnesses was over 65 years old, another over 70, and both somewhat infirm, and that they were the only witnesses to the facts which he proposes to prove by them. The bill further set forth the facts which the plaintiffs expected to prove by the testimony of each of these witnesses, and showed the same to be material; that plaintiff had been advised that he had no remedy for perpetuating the testimony of these witnesses, according to the general rules and practice of this court, and could only have relief under a bill of this nature. The prayer was for a substituted service upon the attorneys of the non-resident defendants, and that a commission might issue to take the testimony of the witnesses named in the bill, to be read, provided the case is reversed by the supreme court and remanded for hearing in the circuit. Annexed to this bill as an exhibit was a copy of the original bill, filed in the Western district, the purpose of which was to set aside the judicial sale of a large tract of land as a fraud upon the plaintiff, and others standing in like situation with him. Upon the filing of this bill an order was entered that substituted service as to the non-resident defendants be made, by serving the subpœna upon their solicitors in the main case. This order was afterwards vacated and set aside as beyond the power of the court, and the case left to proceed against the defendant Jerome, the only resident of the state. He afterwards suffered default, and, upon the eve of signing a decree against him, came in and moved to set aside the order *pro confesso*, and for leave to answer, accompanying his motion with a copy of the proposed answer.

*J. P. Whittemore*, for plaintiff.

*F. A. Baker*, for defendant.

BROWN, J. This bill is an anomalous one. So far as we are informed there is no case to be found in the reports of this country of a bill solely to perpetuate testimony. To entitle the party to maintain a bill of this description the plaintiff must aver: (1) That there is a suit depending in which the testimony of the witnesses named will be

material. Story, Eq. § 307. (2) That the suit is in such condition that the depositions cannot be taken in the ordinary methods prescribed by law, and that the aid of the court of equity is necessary to perpetuate the testimony. (3) The facts which the plaintiff expects to prove by the testimony of the witnesses sought to be examined, that the court may see that they are material to the controversy. (4) The necessity for taking the testimony, and the danger that it may be lost by delay.

A failure to make the proper averment in any of these particulars is good ground for a demurrer, but we do not understand that as a rule the allegations of the bill can be put in issue by an answer. In cases of bills strictly to perpetuate testimony, (which will only lie when no suit has been commenced,) the defendant may allege by way of plea any fact that may tend to show that there is no occasion to perpetuate the testimony; as, for instance, that there exists no such dispute or controversy as that alleged in the bill, or that plaintiff has no such interest in it as will justify his application to perpetuate the testimony. Story, Eq. Pl. 306*a*. But in bills to take testimony *de bene esse* there must be a suit depending in some court, and this of itself is evidence of a controversy between the parties. In *Ellice* v. *Roupell,* Story, Eq. Pl. 306*a*, note, Sir J. ROMILLY stated the rule to be in regard to bills for perpetuating testimony that defendant, by consenting to answer the plaintiff's bill, admitted his right to examine witnesses in the case, and that implies all that is demandable. "For if there is really any *bona fide* controversy between the parties, the right to perpetuate the testimony follows as a matter of course." In a case of the kind under consideration, where a hearing cannot be had in the supreme court in less than two or three years, and the witnesses are some of them old and infirm, it is obvious that the plaintiff ought in some way or another to be able to secure their testimony against the contingency of death, absence, or mental alienation. At the same time resort ought not to be had to the extraordinary power of a court of equity, if the usual methods of procedure prescribed by statute are competent to afford relief. The case is no longer "depending" in the circuit court, and hence is removed from the operation of the act of congress permitting depositions to be taken *de bene esse.* Rev. St. § 863. From the time the appeal was perfected, the jurisdiction of the circuit court was suspended, and so remains until the cause is remanded from the appellate court. *Slaughter-house Cases,* 10 Wall. 273. It has also been expressly held that this act has no application to cases pending in the supreme court. *The Argo,* 2 Wheat. 287.

Acting upon this theory that the deposition could not be taken upon notice under the statute, it seems that plaintiff applied both to the circuit and to the supreme court for leave to take his testimony by deposition under equity rule 70, but this application was refused upon the ground that he might proceed to take the depositions

*in perpetuam rei memoriam* under Rev. St. § 866. *Richter* v. *Union Trust Co.*, 115 U. S. 55; S. C. 5 Sup. Ct. Rep. 1162. This section provides that "in any case where it is necessary, in order to prevent a failure or delay of justice, any of the courts of the United States may grant a *dedimus potestatem* to take depositions according to common usage; and any circuit court, upon application to it as a court of equity, may, according to the usages of chancery, direct depositions to be taken *in perpetuam rei memoriam*, if they relate to any matters that may be cognizable in any court of the United States." The first clause of this section clearly has no application, since the supreme court has refused a *dedimus potestatem*, and the circuit court has no power to grant one by reason of the *supersedeas.* We must look, then, to the second clause, for the power of this court to order these depositions to be taken *in perpetuam*, and to "usages of chancery" for the manner in which such power shall be exercised. Before adverting to this, however, we are bound to consider whether a remedy is not afforded by section 867, which provides "that any court of the United States may, in its discretion, admit in evidence in any cause before it any deposition taken *in perpetuam rei memoriam* which would be so admissible in the courts of the state wherein such cause is pending, according to the laws thereof."

If, then, there be any law of this state under which these depositions can be taken, and in such manner as to be admissible in the courts of the state, we think we are bound to presume that the circuit court for the Western district would exercise its discretion and receive these depositions, and hence that this bill is unnecessary. On referring, however, to the various statutes of this state upon the subject, (2 How. St. §§ 6647, 7416, 7433, 7460, 7475, 7476,) we find they all refer to cases pending in some court within the state, except section 7476, which authorizes "any person who expects to be a party to a suit to be thereafter commenced in a court of record" to cause the testimony of any material witness to be taken conditionally and perpetuated. But the difficulty with this section is that the plaintiff is not a person who expects to be a party to a suit to be hereafter commenced, but is already a party to a suit begun and disposed of by the court in which it was commenced, but which is liable to be remanded to that court for trial or hearing. Sections 7452 to 7458, prescribing the method of taking depositions to be used in the courts of other states, have no application, since the case, as it now stands in the supreme court, is in no condition for the taking of testimony, and never will be until it is remanded to the circuit court.

What are, then, the usages according to which depositions may be taken *in perpetuam rei memoriam* under section 866? We think an answer to this question must be found in general equity rule 90, which, in cases where the general equity rules do not apply, requires the practice of the circuit court to be regulated by the high court of chancery in England, so far as the same may reasonably be applied

consistently with the local circumstances and conveniences of the district.   In England bills to perpetuate testimony are not uncommon, though much less frequent now than formerly.   Upon the whole, in view of the great doubt whether there is any statute, either state or federal, or any established practice under which this testimony can be taken for use in the circuit court after this case shall have been remanded, we have come to the conclusion that the case is a proper one for a bill to take the testimony of these witnesses *de bene esse,* provided the plaintiff has, by his bill, made a case in other respects for the interference of a court of equity.

The answer sets up in defense that, before the bill was dismissed, the case was pending in the circuit court for some 17 months, during all of which time this testimony might have been taken *de bene esse* under the act of congress.   We do not think, however, that the plaintiff was at fault in this particular.   He was not bound to presume that the circuit court would sustain the demurrer and dismiss his bill, or to act upon any such supposition.   The ordinary course is not to begin taking proofs until after the case is at issue upon answer and replication, and we think plaintiff is not chargeable with laches in pursuing the usual course in that regard, particularly in view of the fact that the defendant appears to have suffered no injury by the delay.   Defendant also denies, upon information and belief, that the witness Anthony has such knowledge of the facts or will give such testimony as plaintiff professes to expect, and avers that his only object is "to fish something out of him which will have a tendency to establish his case." We do not think this allegation of the bill can be traversed in this way. We have the right to infer that plaintiff would not seek to examine a witness unless he expected to obtain something material to his case, and we are not at liberty to inquire in this proceeding whether his testimony is likely to be favorable to him or not.   If the original case were in a condition to permit the testimony to be taken, the plaintiff would have the right to do exactly what defendant charges him with wishing to do, viz., to probe the knowledge and conscience of these witnesses—to ascertain the exact facts which he alleges constitute a fraud upon his rights.   We think that all doubts with regard to the materiality of his testimony should be construed in favor of the plaintiff.

The allegations of the answer, that the testimony of the other witnesses is not material, and that they are not the only witnesses by whom the facts can be shown, are open to the same objection.   The court cannot properly pass upon these questions until the testimony is given, when the court in which the depositions are read will determine how far they are material to the plaintiff's case.   Still less are we at liberty to inquire into the exact age, or mental or physical infirmities, of these witnesses.   It is true the allegations with respect to these are necessary to be made in the bill, as a basis for taking the testimony, but we do not understand them to be traversable to any

greater extent than are like averments in an affidavit to take deposition *de bene esse* under the act of congress. If an issue could be made upon these facts, and testimony taken, more time might be consumed than would be necessary to take the depositions, and the whole object of the bill thus be defeated. This object is to obtain a summary examination of the witnesses, that their testimony may be perpetuated; and, as before observed, we doubt whether any of the matters of fact contained in the bill can be put in issue, except, perhaps, wi h regard to the existence of the controversy. Nor can we review the opinion of the court in sustaining the demurrer to the original bill, unless, at least, it appears that this bill was so clearly frivolous that it ought never to have been filed, or plaintiff could have no reason to expect that his suit could be successful.

We think plaintiff is entitled to a decree for an examination of his witnesses.