BANKS, Presiding Justice,
for the Court:
¶ 1. W.A. and T.A. (“the A-s”) brought this action for the termination of the parental rights of D.J.J. and A.J. (“The J-s”) and for the adoption of ■ the J-s minor children, K.M.J. and E.S.J. W.A. is the brother of A.J., the natural mother of the minors. The Mississippi Department of Human Services (“DHS”) was made a defendant because, by prior order of the Youth Court, the minors had been placed in its custody.
¶ 2. The “Second Amended Complaint for Termination of Parental Rights and Complaint for Adoption” filed by the A-s was a combined action for the termination of the parental rights of the natural parents, the J-s, and the adoption of their minor children. This filing necessitated the appointment of a guardian ad litem (“the guardian”) pursuant to Miss.Code Ann. § 93-15-107. The chancery court found it necessary to also appoint a special investigator to aid the court.
¶ 3. The trial on the merits was held on May 14, 1997. At the conclusion of the As’ case in chief, the J-s, moved to dismiss the action. The court dismissed the action. The court held that all fees and expenses incurred by the guardian and by the court’s special investigator would be assessed against the A-s as costs of court in this matter. Thereafter, a proposed final order was circulated among all attorneys in this cause. This order was executed by all counsel agreeing as to form. This order included the Court’s ruling that, “all fees and expenses incurred by the Guardian Ad Litem and/or by the Court’s Investigator and approved by the Court shall be assessed against the Plaintiffs as costs of Court in this matter.” This order dated June 29, 1997, was entered.
¶ 4. On July 1, 1998, the chancery court entered its “Order Taxing Court Costs, Fixing and Allowing Fees, and Directing Payment” assessing the fees of the guardian and the court’s special investigator to the defendants, the J-s and DHS. The chancery court fixed the guardian’s fee at $5,350 and the court’s special investigator’s fee at $570. Additionally, the chancery court assessed DHS with sixty percent (60%) of each of the fixed and allowed fees and the J-s with forty percent (40%) of each of the fixed and allowed fees.
¶ 5. Thereafter, DHS filed a “Motion for Reconsideration of Order Taxing Court Costs, Fixing and Allowing Fees, and Directing Payment.” The court modified its order. The new order provided that the A-s would be liable for 60% of the fees. The J-s remain liable for the other 40%. The order, also however, provided that in the event the A-s could not pay DHS would have to pay. Further, the order provided that in the event DHS had to pay it was automatically granted a judgment against the A-s for the amount it paid. Aggrieved DHS filed this appeal.

I.

¶ 6. “[Cjhancery courts have large discretion in apportioning costs. Nevertheless, the exercise of such discretion is not final, but is reviewable on appeal, and if it appear [sic] that the decree apportioning the costs works a manifest injustice on any of the parties, the decree will be reversed.” Canton v. Ross, 157 Miss. 788, 128 So. 560, 562-63 (1930).
¶ 7. DHS argues that it was not before the trial court requesting any relief. This cause included claims, raised by the A-s, for the termination of the parental rights of the J-s. DHS points out that in addressing this issue in Runions v. Runions, 186 Tenn. 25, 207 S.W.2d 1016, 1019 (1948), the Tennessee Supreme Court held:
This proceeding was had for the benefit of these appellants [plaintiffs]. They should pay all costs in all Courts. The appointment of a guardian ad litem to represent the infant was necessary in *404 order that appellants’ [plaintiffs’] ownership of this land might be determined. There is no one other than these appellants [plaintiffs], for whose benefit these proceedings were had, to pay this guardian ad litem fee for services of which they received the benefit.
See also Hoffman v. Morgan, 206 Okla. 567, 245 P.2d 67 (1952).
¶ 8. This Court addressed a similar issue in Canton v. Ross, 157 Miss. 788, 128 So. 560 (1930). In Canton, the Court held that:
We are of the opinion that, under the facts in this case, the decree charging the appellants each with one-third of the costs of the special master did them a manifest injustice. Estelle Montgomery, one of the heirs, alone instituted the proceedings which resulted in the appointment of the special master. The appellants, as shown above, had no part whatever in instituting and conducting the proceedings. The proceedings were fruitless so far as the estates were concerned .... The costs of this fruitless effort on the part of Estelle Montgomery was [sic] the special master’s fees and expenses, amounting to between fourteen and fifteen hundred dollars.
We are unable to see any just ground upon which any part of this amount should be charged to the appellants.
Id. at 796,128 So. at 563.
¶ 9. It is true that the A-s alone instituted the proceedings which resulted in the appointment of a guardian ad litem and special investigator. DHS had no part whatever in instituting the proceedings. Further, the proceedings were fruitless; the court found that the A-s were unable to meet their burden of proof. The costs of such fruitless effort on the part of the A-s were the fees of the guardian and special investigator. According to DHS, these fees should be assessed entirely against the A-s, whose filing necessitated the appointment of a guardian and special investigator. DHS argues that it was not a party seeking termination of parental rights, and no part of said fees and expenses should be assessed against it.
¶ 10. The chancery court is charged to give adequate consideration to the “financial abilities” of the parties to pay any assessed fees, and then how should the same be apportioned, if any. Bumgarner v. Bumgarner, 475 So.2d 455, 456 (Miss.1985); see also Cheatham v. Cheatham, 537 So.2d 435 (Miss.1988).
¶ 11. Both Miss. R. Civ. P. 17(d), and Miss.Code Ann. § 93-15-107 (Supp.1999), require the appointment of a guardian ad litem in termination of parental rights cases. Having spent several hours in conferences and review of pleadings and amended pleadings, and other non-disposi-tive work with all counsel of record, the chancery court knew that it was required to appoint a guardian.
¶ 12. On July 1, 1998, the court entered its order directing payment to the guardian. The court held that $5,350 was reasonable. The court gave the following rationale for changing its earlier order that the A-s should be responsible for the payment to the guardian:
Regarding the taxing of the said compensations the Court is aware that under most circumstances those sums might be taxed as court costs unto the Plaintiffs; however, the Court has carefully reviewed the evidence produced before the Court in this trial and notes the following unusual circumstances prevailing, namely: (1) the likelihood of the realization of collection of the stated compensations from the unsuccessful Plaintiffs is extremely remote, for the evidence indicates that the Plaintiff W.A. is not gainfully employed and realizes income of only approximately $504.00 monthly, that being from Social Security disability payments and Supplemental Security Income (SSI), while the Plaintiff T.A. realizes income of only approximately $500.00 monthly working at the Pilgrim Home; (2) both the minor children subject to this action *405 were at the time of the institution of this action, and yet remain, in the legal custody of the Department of Human Services, whereby said Department incurs responsibility for providing those things necessary to the protection and preservation of the rights of the minor children, including not only the providing of Counsel in the trial of this action but also, as the Court views the situation, the providing of the statutorily mandated Guardian Ad Litem in parental termination rights actions; and (3) the Court is now reliably informed by Counsel for the Defendants J’s that D.J.J. is on the verge of the receipt of a substantial sum of money as award for personal injuries received in past employment, and he will therefore be in financial posture to contribute to the payment of the fixed and allowed compensations, he having legal responsibility as a parent of the minor children to contribute to their necessities.
(emphasis added). Based on this rationale the chancery court gave its 60-40 order.

II.

¶ 13. The chancery court was required to appoint the guardian. The court was concerned that the guardian might not be fully compensated because of the financial status of the parties. It attempted to reach an equitable conclusion. An equitable solution was reached, and it should not be disturbed.
¶ 14. We note that Miss.Code Ann. § 93-15-107 provided at the time of this suit and provides today that: “... any agency holding custody of [the children] shall act as party plaintiff’ in termination proceedings. It is clear that because DHS had custody of the children it had an interest in the outcome. Moreover, under our statutory scheme DHS is financially responsible for the care and the general expenses involving children in its custody. See Miss.Code Ann. §§ 43-15-5, 43-15-7, 43-15-13, 43-15-17, and 93-15-107(2) (1999). There was no manifest error here.

III.

¶ 15. For the foregoing reasons, the chancellor’s decision is affirmed.
¶ 16. AFFIRMED.
PRATHER, C.J., PITTMAN, P.J., McRAE, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR.